AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:26-mj-00060 |
| Nathalie Claire Buchanan | ) | |
| and | ) | |
| Charles Ottis Johnson | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____February 11, 2026_____ in the county of _____Marion_____ in the _____ District of _____Oregon_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Susbstances and Possess with Intent to Distribute Controlled Substances |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possess with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

The attached affidavit of DEA SA Teegan Hand

☒ Continued on the attached sheet.

Attested to by Telephone
*Complainant's signature*

DEA SA Teegan Hand
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 2:20 p.m.

Date: _____03/17/2026_____

*Judge's signature*

City and state: _____Portland, Oregon_____     Jeffrey Armistead, U.S. Magistrate Judge
*Printed name and title*

3:26-mj-00060

DISTRICT OF OREGON, ss:                              AFFIDAVIT OF TEEGAN HAND

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Teegan Hand, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been employed since February, 2022.  I am currently assigned to the DEA Seattle Field Division (SFD) Portland District Office (PDO).  I have received specialized training from the DEA, to include a 17-week Basic Agent Training course.  Prior to working for the DEA, I worked for approximately 4 years as a patrol officer between Wyoming and Colorado and approximately 4 years as a narcotics detective with the Northern Colorado Drug Task Force. As a narcotics detective and special agent, I have participated in numerous drug investigations including: wiretap investigations, undercover purchases of controlled substances, and controlled substance production and conspiracy investigations. I am familiar with drug trafficking organization (hereinafter, "DTO") investigations, including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed.  I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for the following individuals:

- **Nathalie BUCHANAN** and **Charles JOHNSON** for the crimes of conspiracy to possess with intent to distribute controlled substances (including methamphetamine) and possession with the intent to distribute methamphetamine

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 on February 17, 2026.

As set forth below, there is probable cause to believe, and I do believe, that **Nathalie BUCHANAN** and **Charles JOHNSON** violated 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.

3.      This affidavit is intended only to show that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Investigators have intercepted suspects in this case communicating with co-conspirators in English and Spanish. Any sample-intercepted communications herein, initially conducted in Spanish, were translated into English by monitors fluent in Spanish and hired by the DEA to perform this service. Any quoted speech or text herein is taken from these transcriptions.

## Applicable Law
### *Target Offenses*

4.      Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846 makes it illegal to possess and conspire to distribute controlled substances (methamphetamine) with intent to distribute them, and to conspire to do so.  This offense is punishable by 10 years to life imprisonment, a fine of up to $10 million, and five years' supervised release.

**Page 2 – Affidavit of Teegan Hand**

### *Background of Investigation*

6.     In July of 2025, DEA Portland began investigating a DTO operating in the ████ ████ Oregon area. The DTO is operated by ██████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████.

7.     ████████████████████████████████████████ ██████████████ as a high-level distributor of methamphetamine. ██████████████ ████████████████████████████████████████ ██████████████ was previously the target of a DEA wiretap. During that investigation, DEA learned ██████████████ acted as a broker and dispatcher for drugs from Mexico. ██████████████ operated his own customer base and would receive calls from customers in the United States. ██ would then call a source of supply locally to deliver drugs to customers and collect payments. In this investigation, DEA learned ██████████████ sends █ customers to ██████████████ and then ██████████████ utilizes his couriers, including ██████████████, to deliver drugs to ██████████████ customers. ████ ██████████ then pays a fee to ██████████████ for brokering the deal.

### *Statement of Probable Cause*

8.     ████████████████████████████████████████ ██████████ (SP-3895). The phone is a TextNow phone number used by ██████████████ ██████████, a Mexico based dispatcher of multiple drugs. ██████████████ primarily

**Page 3 – Affidavit of Teegan Hand**

brokers deals for customers seeking distribution amounts of methamphetamine in the United States.

9.    On January 29, 2026, ███████████████████ ███████████████████████████████████ set up a deal with a female (later identified as BUCHANAN) for four pounds of methamphetamine. Investigators saw BUCHANAN arrive in a Kia Sportage driven by JOHNSON and BUCHANAN met with one of ███████████ couriers, ███████████. Investigators witnessed what appeared to be a drug deal between the courier and BUCHANAN. Investigators requested a state officer to assist in stopping BUCHANAN to interdict the drugs, but BUCHANAN was able to get away from investigators before a state officer could stop BUCHANAN. Investigators believed BUCHANAN was headed back towards the Bend, Oregon area and requested law enforcement in Bend to assist in locating and stopping BUCHANAN.  Investigators in Bend were unable to locate BUCHANAN and no drugs were seized.

10.    ███████████████████████████ ███████████████████████████ ███████████████ attempted to arrange a controlled purchase between ███████████ and a customer named "Chuck." ███████████ ███████████ "Chuck" is Nathalie's husband, and she recently had her baby. Chuck requested ███████████ meet them halfway due to the birth of their baby.

11.    ███████████████████████████ ███████████████████████████ ███████████████████████

**Page 4 – Affidavit of Teegan Hand**



12.    On February 11, 2026, at approximately 9:20 a.m., DEA established surveillance at the HomeTowne Studios and observed a grey Kia Sportage previously driven by JOHNSON during the meeting on January 29, 2026, with ████████. At approximately 10:45 a.m., investigators observed ████████ arrive at the hotel. At approximately 11:08 a.m., investigators observed BUCHANAN receive a white bag through the window of ████████ and place it in her Sportage. JOHNSON was present during the interaction and JOHNSON spoke with ████████

13.    At approximately 11:27 a.m., the parties separated and BUCHANAN left driving the Sportage with JOHNSON in the passenger seat. Investigators followed BUCHANAN until a uniformed police officer could arrive to initiate a traffic stop. At approximately 12:35 p.m., Oregon State Police Sergeant and DEA TFO Adam Miller conducted a traffic stop on the vehicle. Sergeant Miller identified BUCHANAN and JOHNSON as the occupants by their Oregon identifications. BUCHANAN gave Sergeant Miller consent to search the vehicle. Assisting troopers on the scene located a black backpack on the backseat. The backpack was locked with a padlock. JOHNSON stated the backpack was his dad's, but he didn't know the

**Page 5 – Affidavit of Teegan Hand**

combo to open the backpack. He also stated his dad had JOHNSON come to Salem to pick up the backpack and stated he picked it up across town. JOHNSON then refused to answer further questions regarding the backpack. Sergeant Miller deployed his K9 Titan and Titan alerted to the odor of controlled substances coming from the backpack. Sergeant Miller searched the backpack and located approximately 4.3 pounds of suspected methamphetamine and a check written to BUCHANAN. During the traffic stop, BUCHANAN stated she recently had a baby that was in the NICU in Bend. BUCHANAN provided Sergeant Miller the phone number (453) 315-2074 as her phone number. BUCHANAN and JOHNSON were released pending further investigation.

14.    On February 24, 2026, United States Magistrate Judge You authorized a search warrant of ▮▮▮▮▮▮▮▮▮▮▮▮ TextNow account.  Investigators received data from TextNow which included text message content and media messages. Investigators observed multiple messages confirming ▮▮▮▮▮▮▮▮▮▮ has multiple customers that ▮ sends to different sources of supply in the United States. Investigators reviewed text messages during the suspected drugs deals with BUCHANAN and JOHNSON on January 29, 2026, and February 11, 2026.

15.    On January 29, 2026, investigators observed several text messages with (453) 315-2074, this was the same phone number BUCHANAN stated was her phone number during the traffic stop on January 29, 2026. There were several text messages in which BUCHANAN was arranging a purchase of "two on two on front," as well as arranging payment to ▮▮▮▮▮ ▮▮▮▮ electronically. From my training and experience, I am aware methamphetamine is frequently sold by the pound in larger quantities. I am also aware methamphetamine is ▮▮▮▮ ▮▮▮▮▮ primary controlled substance to sell. I recognized the statement as a coded order

**Page 6 – Affidavit of Teegan Hand**

for two pounds of methamphetamine which would be purchased by BUCHANAN and two pounds which would be given to BUCHANAN on consignment, with the balance to be paid at a later date. I also observed a message from BUCHANAN that read, "Same Kia sportage were 7 minutes out. Can you see if it's okay I was gona get in his truck as we can drive up the road a little so it's not too obvious and my husband will just follow us a bit so it's not obvious cuz we also just pulled behind about three lovely officer cars ..."[1] From the context of the conversation, I believe BUCHANAN was organizing the details of the drug meeting. She was also conscious of drawing attention to herself so she was requesting she get in the vehicle with the courier while her husband followed closely behind. This is a tactic used to prevent possible witnesses or law enforcement from observing BUCHANAN quickly entering and exiting a courier vehicle, which is a common sign of a drug deal. BUCHANAN's husband would then follow them a short distance away before picking her up with the purchased drugs.

16.     I also observed multiple text messages from BUCHANAN to ▓▓▓▓▓ ▓▓▓▓▓▓ in which BUCHANAN would reference needing to consult with her husband about driving to meet with ▓▓▓▓▓▓▓▓▓ to purchase more drugs.

17.     In one exchange arranging the purchase and seizure of drugs on February 11, 2026, investigators observed the following message from (458) 315-0810, "Hey brother, it's chachie nathalie's husband.  Her phone broke and so she hasn't been able for contact anyone. The baby is okay he's still.inthe intensive unit. We were wondering if you could ask and see if the driver can make an exception n this time and maybe meet us halfway ornaokehwe re e closer than the 4 hour drive. It's just hard for us if anything happens to the baby at.nthe hospital we can't

---

[1] All the quoted text messages are copied verbatim to include all the grammatical and spelling errors.

**Page 7 – Affidavit of Teegan Hand**

br there very quickly if we are so far away. If not wenund we understand." I know BUCHANAN had a newborn baby at the NICU. From the text message it sounded as if "Chachie" is requesting ███████████████ courier drive drugs to them because BUCHANAN cannot travel. I am also aware JOHNSON is BUCHANAN's husband and believe Chachie is a nickname (or possibly a typo) to use with ██████████████. ████████████████ driver was unable to drive and meet BUCHANAN and JOHNSON which precipitated the two driving to Salem and meeting with ████████████ on February 11, 2026.

18.    Based on the observed drug deals, statements to law enforcement, seized drugs and text messages with ████████████████, I believe JOHNSON and BUCHANAN are partners in drug dealing and routinely purchase distribution quantities of methamphetamine.

19.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Nathalie BUCHANAN** and **Charles JOHSNON** committed the crime of possession with intent to distribute and conspiracy to possess with intent to distribute and distribute controlled substances, including methamphetamine – in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846.

20.    I therefore request that the Court issue a criminal complaint and arrest warrants for **Nathalie BUCHANAN and Charles JOHSNON**.

21.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Lewis Burkhart and AUSA Burkhart advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

**Page 8 – Affidavit of Teegan Hand**

**Request for Sealing**

22.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.  I believe that sealing these documents is necessary because the individual to be arrested is relevant to an ongoing investigation, and any disclosure of the individual's arrest at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation.  Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*/s/ Teegan Hand By Phone*
Teegan Hand
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 2:20 p.m. on March 17, 2026.

JEFFREY ARMISTEAD
United States Magistrate Judge

**Page 9 – Affidavit of Teegan Hand**